RECEIVED
IN ALEXANDRIA, LA.

JUN 2 2011

TONY R. MOORE, CLERK
BY: _____ DEPUTY

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| **HENRY C. VANTHA** | **CIVIL ACTION NO. 1:09-cv-375** |
| -vs- | **JUDGE DRELL** |
| **UNITED STATES OF AMERICA AND JOE KEFFER** | **MAGISTRATE JUDGE KIRK** |

## RULING

Before the Court is the motion for summary judgment of Defendant Joe Keffer. (Doc. 41). The sad saga of this case is as follows:

Plaintiff Henry C. Vantha's son, Peter Vantha, was an inmate at the United States Penitentiary in Pollock Louisiana ("USP Pollock"). From February 27, 2008 until his death the next month he was housed in the Special Housing Unit ("SHU"). Ordinarily only two inmates are housed in a cell in the SHU. However, because of space constraints and overcrowding, on March 3, 2008, a third inmate was placed in Peter Vantha's cell. The next day Peter Vantha was found non-responsive on the floor of the cell, and eight days later he was pronounced dead, apparently from injuries received in an attack he suffered while in the cell with the two others.

In his motion for summary judgment, Defendant Keffer details the many procedures USP Pollock employs "to reduce the risk of violence within the three-man cells." (Doc. 41-5, p. 5). Whatever the efficacy of these procedures ordinarily, they failed here.

It could be that this incident was purely an accident, such that Mr. Vantha's death reasonably could not have been prevented. On the other hand, as Plaintiff posits in his opposition to Defendant's motion (Doc. 50), it could be that these procedures are flawed, that someone blundered

in implementing them, or that some other unreasonable conduct foreseeably resulted in his son's death. Likewise, it is possible that, as a result of this conduct, some person is or should be legally responsible for that death.

At this time, we do not know exactly what happened in Mr. Vantha's cell, or at USP Pollock at the time of his death. However, even if some person is responsible for his death, we conclude, *based entirely on the evidence before us*, that that person is not Warden Keffer.

Regarding Peter Vantha's death, the extent of Keffer's involvement appears to be that he approved the regulations used in permitting the three person cell placement, as well as the ultimate transfer of the third inmate into Mr. Vantha's cell. These are classic discretionary decisions that government officials from time to time must make, and for which they generally enjoy personal immunity enforceable, as here, on summary judgment. See *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1981). Specifically, unless an official can reasonably anticipate at the time a decision is made that his choice will result in the violation of another individual's constitutional rights, the official enjoys personal immunity from suit. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This immunity "will shield an officer from personal liability" so long as he "reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 222, 237 (2009). This type of immunity is called "qualified immunity."

Here, that Keffer's decision resulted in a tragic death does not mean legally that it was unreasonable at the time it was made. Taking Plaintiff's allegations as true, certain actions by other individuals (for instance, if, as alleged, the inmates in Mr. Vantha's cell were indeed provided alcohol by the prison guards on duty) could be sufficiently foreseeably unreasonable to make them personally liable under this qualified immunity test. However, none of these individuals is a

defendant in this suit, and there is nothing in the record to indicate that any of Warden Keffer's own actions or decisions violate this standard.

Likewise, the conduct of Keffer's subordinates, even if illegal, is not automatically imputed to him merely by virtue of his supervisory position. See *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). He can only be held liable for his <u>own</u> actions, none of which here foreseeably and unreasonably contributed to Peter Vantha's death. The warden is not intrinsically personally liable for all of the mistakes or misconduct that may occur in his prison, even when such mistakes or misconduct result in a tragedy like that experienced by Plaintiff.

For these reasons, we must follow the law that Defendant Keffer is entitled to qualified immunity for the decisions he made relating to Peter Vantha's death. His motion (Doc. 41) must be GRANTED, and the suit against him must be DISMISSED. Further, Keffer was the only defendant remaining, as no other defendants were added. Thus, the dismissal of the claims against Keffer results in the dismissal and termination of this suit.

We have had numerous discussions with Mr. Vantha about his case and found him to be a sincere and courteous man profoundly affected by his son's death. We express our deep regret and condolences to him. The loss of a child is perhaps the greatest pain a person can experience, and unfortunately, our institutions are not so perfect that every tragedy can be atoned, much less redressed by the courts. Here, on the facts and record presented, we conclude that the law does not provide Plaintiff a remedy, and we rule and enter judgment accordingly.

SIGNED on this 2ND day of June, 2011 at Alexandria, Louisiana

DEE D. DRELL
UNITED STATES DISTRICT JUDGE